Good morning, Your Honors. May it please the Court, I am Cheryl Lowenthal. I represent Bernard Moore. We come before you today with an indictment that is jurisdictionally defective with regard to Count 4, the possession of a firearm by a convicted felon under the recent decision in June by the Supreme Court in Rehafe. That is now, our indictment does not state a criminal offense. The reason is that it only cites Section 922G. It does not also cite to 924A2, nor does it track any language from 924A2. And that is what Rehafe indicated repeatedly throughout the opinion, Justice Breyer's opinion, that is necessary to make possession of a firearm by a convicted felon a criminal offense. 922A is merely a prohibition. It is analogous to this Court's case of Izurieta. In that case, it involved importation of food products and did not cite a criminal offense because it was a civil regulation. 922A, 922G, by itself, standing alone is not a criminal offense. It does not confer jurisdiction on the courts of the United States under 18 U.S.C. 3231. The government has submitted some supplemental authorities of recent cases. It's a rapidly evolving area of the law. The court cites the Reed case. That's this Court's decision recently, and that may be distinguishable because Reed cites both statutes, which is what Justice Breyer says in Rehafe is required to state a jurisdiction, to state a criminal offense, and therefore confer jurisdiction. In this Court's decision in Brown, it also may be distinguished because Brown tracks the language of the statute. It may not cite it, but it does track the language, and as long as an indictment either tracks the language or cites the statute, then it may confer jurisdiction. Our indictment in this case, and we have attached as exhibits in our response filed on the 19th of November, we have attached copies of the indictments in the Rehafe case, in our case, and in another case, and they show what was charged and what wasn't, and in our case, only 922A was charged. Rehafe made clear that the knowledge of status requirement derives from 924A2 and not 922G, and that is repeated several times during the opinion. I would call the Court's attention to the Rehafe decision at pages 2194, 95, 96, 97, and 2200. Where in Rehafe does the Court say that 922G is not a criminal offense? Well, the opinion states that the two statutes together are a criminal offense, and if you look at 922A, it is merely a prohibition. It does not provide a penalty, and it does not make the conduct, it says it is unlawful, but it does not make it a criminal offense that may confer jurisdiction on the courts of the United States, and I understand that there is a recent case from Your Honor's home circuit, and that would be the Malday case, which also has been cited recently by the government, and we would submit, most respectfully, in that case, the indictment, and we have attached a copy of that indictment, and that does also cite only to 922G. We would most respectfully suggest that that case, number one, it's not binding on the Eleventh Circuit. Number two, it is not persuasive in our case today because it was just decided wrongly. It's a misinterpretation or a misreading of REHAFE. Well, how does the mere omission of a mens rea element relating to your client's 922G claim fail to notify your client of the charges against him? Because omission of an element may be corrected by placing language, language from the statute in the indictment, which ours does not do, or by citing the statute, which, again, our indictment does not have the statute cited in it. And compounding the error in the Second Circuit's decision, it also reasoned that the indictment defect was non-jurisdictional because in REHAFE, the Supreme Court did not order dismissal of the indictment. But unlike the indictment in the Second Circuit case, Balde, the indictment in REHAFE and also in this court's decision in Reed cited 924A2. Oh, I'm sorry. Unlike the indictment in Balde, the indictment in REHAFE and Reed cited 924A2. As a result, the indictment in REHAFE and Reed did no more than omit a mens rea element, and that is a non-jurisdictional defect, and that may be subject to plain error review. A jurisdictional defect is not subject to plain error review. It cannot be harmless error. It fails to state a crime against the United States, and that portion of the indictment must be dismissed. Thank you. You saved some rebuttal time. Pardon me? You saved your rebuttal time. Yes, thank you. Mr. Scalfani. Good morning, Your Honors. Thomas Scalfani on behalf of Mr. Miller. And while REHAFE applies only to count four, Mr. Miller has some other problems because he was convicted on other counts. And there are really three issues which I would respectfully suggest taken together cumulatively would require a new trial for Mr. Miller. And specifically, I'm referring to the jury note problem, the manner in which the district court handled the jury note where the jury expressed fear if they were to convict. That, by the way, standing alone, should require a new trial. But you add on to that the fact that Mr. Miller was shackled during the entirety of the trial, and I'm not suggesting that the jury may have seen him. As I pointed out in my brief, we have just the barest of indications that there was shackling. The issue here is – Well, is there any indication of whether he got up from the council table? Well, certainly that may have contributed to why the jury was afraid that – Did he leave the council table and walk around at all? No, he did not. No, actually what happened was, which is the third issue, and that being the question of him being able to question a witness during the rebuttal case, his trial counsel agreed that he could conduct that examination from his seated position at council table, which had a bunting or a draping around it so that the jurors could not see the shackling. But the fact that he had to conduct that examination from the seated position rather than from up in the podium as I am before you today would certainly be a clue to the jury. My understanding is that he only asked a few questions on cross. No, he actually – He didn't do the whole cross, did he? Well, he did what was effectively a direct examination of a possible witness. And he did a good portion of it, so much so that the trial judge, called a sidebar and said, you know, this guy is rambling along. What's going on here? Essentially convinced trial counsel to take over. But the issue there – the issue, Your Honors, is that the defendant was shackled without there being any hearing whatsoever before the trial judge. That required the trial judge to make specific findings. Were you seeking plain error review of that point? No, that's not. That's abuse of discretion because the issue was preserved – well, no, I'm sorry. On the shackling, you're correct. That would be plain error on the shackling. However, if we're taking the cumulative error situation, I think maybe plain error would not come into play. Why didn't either defendant raise an objection to the shackling? I wish I knew, Judge Pauli. I really do. It seems – and, again, I don't want to go outside the record – but it appears, certainly from this case, that as a matter of course, individuals who do not make bond or who are charged with certain types of crimes are routinely shackled. But I'm only drawing an inference based upon what we do know from this barren record. But you're right. They did not raise it, and the problem only reared itself when the district court actually pointed out in connection with Mr. Miller's application to be able to question the witness. But the jury note problem I would like to – since I only have a minute or so to go – is something that I'd really like to draw the court's attention to. The problem here is not that the trial judge conducted ex parte of the individual two jurors who came forward. It is that the trial judge, first of all, kind of cut off the two jurors who came out to speak with him. And remember, these are civilians who are addressing a federal judge. I mean, I know lawyers who sometimes shrink in front of federal judges. But more importantly, it was the summary of how the judge did not advise the lawyers. Number one, that all of the jurors were felt like they were threatened. And number two, that their names would not appear anywhere. The fact of the matter is, is their names and their identities would be all over the transcript of jury selection. And so it was the fact that the trial judge most respectfully really misled the trial counsel that caused trial counsel not to, in the case of my individual, who had already made a motion for mistrial based upon the initial jury note saying that we were afraid, that he was not able to pursue and was lulled into not pursuing a renewal of his motion for mistrial. But more importantly, as I think any trial lawyer would do under those circumstances, request that the court with counsel conduct individual voir dires of each of the jurors to determine not only what is the source of this fear, because there was nothing that occurred during the trial, and the trial judge certainly covered in his questions with the jurors he did speak to that there were no outside influences. But that was only as to two jurors. And the case law and Remmer, et cetera, require that there needs to be, you can't take the word of one juror saying, I speak on behalf of all of them. There needed under those circumstances to be a hearing involving each one of these jurors with counsel present, able to ask questions, so that they could get to the bottom of really what this fear was. And that is a critical element. And that is the reason why he didn't have a fair and impartial jury. I thank you very much. Ms. Mariani. Good morning, and may it please the court. I'm Nicole Mariani, appearing on behalf of the United States. Joining me at council table is Assistant United States Attorney Shannon Shaw, who tried this case before the district court. Appellants raise a multitude of challenges to their conviction, nearly all of which are subject to plain error or abusive discretion review, and none of which are meritorious, particularly in light of the overwhelming evidence against appellants. For 38 days, appellants video recorded themselves committing armed drug trafficking at The Trap, which is a freestanding 200 square foot building, over which they had dominion and control, and inside of which law enforcement found tens of thousands of dollars worth of six different kinds of drugs, piles of drug distribution paraphernalia, multiple drug ledgers, over $1,500 in cash, 55 rounds of ammunition, and three loaded firearms, one of which had Moore's DNA on it, and one of which had Miller's fingerprints on it. Can I direct your attention to the indictment issue with respect to rehafe? Absolutely. To avoid the plain error standard of review, which is fatal to their rehafe claims, particularly after read, appellants argue there's a jurisdictional defect in their indictment because it fails to cite to or track the language of section 924A2. This argument is not persuasive for the reasons that the Second Circuit recently found involved. A jurisdictional defect, which means the district court has no authority to adjudicate the case at all, arises only in two specific and narrow circumstances. And notably, as this court held in Brown and this Supreme Court held in Cotton, a jurisdictional defect does not arise when an indictment omits an element, including the mens rea element. So the first circumstance where you can have a jurisdictional defect is where the indictment affirmatively alleges facts that can never constitute a federal crime. This is what happened in Peter, Israeta, and St. Hubert. For example, in St. Hubert, the indictment charged the defendant with violating 924C, which requires the commission of a crime of violence, but then stated a predicate act that is not a crime of violence. This circumstance does not occur in this case because here the indictment did not allege facts that make the appellant ineligible for a 922G conviction. It alleged that they were felons who not only possessed a firearm but traveled interstate commerce. And that might well be the answer here. And maybe the answer is, well, they had notice and they knew what it was and there's no question that they knew that even though 924A wasn't named specifically, I mean, that is the actual charge that makes it a crime, I guess. But technically, there's no charging language from 924A and there's no citation to 924A. So basically, we would have to conclude that the law under 922G, which just specifies that it is unlawful, blah, blah, blah, is sufficient. Maybe that's right, but I just would like you to address that. Oh, absolutely, yes. That 922G is a criminal offense, it's clear from its own language that begins with stating, it shall be unlawful that. And Rahafe did nothing to alter that. Rahafe at his outset states that 922G is a criminal statute and it also states 922G makes possession of a firearm or ammunition unlawful when its elements are satisfied. The Supreme Court then explained that while 924A2 states that 922G must be, quote, knowingly violated for its penalty provisions to apply, the Supreme Court also said that knowingly mens rea requirement is inherent in 922G itself. The Supreme Court explained its holding in Rahafe was equally and alternatively based on the general presumption in favor of scienter inherent in all criminal statutes, including 922G. In other words, under Rahafe, even if 924A did not exist or was deleted, the government would still need to prove beyond a reasonable doubt that the felon knew his prohibited status. So it doesn't matter whether 924A is charged at all. Correct. That's the government's position, that Rahafe was clear that this mens rea was inherent in 922G itself. And so Appellant's indictment alleges a violation of 922G, both by citing the statute and then by tracking its language, describing status first, possession second, and the nexus with interstate commerce third. That indictment would have been sufficient before Rahafe. And if the Supreme Court, as it stated in Rahafe, that the language of 922G inherently includes a requirement that the defendant knew his prohibited status, then an indictment tracking that statutory language and citing that statute sufficiently charges the defendant with that federal crime. So to put it differently, Rahafe's knowledge requirement details what conduct violates 922G. It does not invalidate 922G or somehow merge it into 924A. How a statute can be violated is a merits question, which goes to the sufficiency of the indictment. It's not a question that affects the jurisdiction of the federal courts to adjudicate the case as a whole. Thus, there's no jurisdictional defect in Appellant's indictment because it does not affirmatively allege facts that can never constitute a federal crime, and it sufficiently charges defendants with a federal crime, being 922G. Because there's no jurisdictional defect in the indictment, the court can dismiss it only if it finds that it was fatally deficient under the plain error standard of review, and Reed precludes that finding in this case. While the government maintains there's no error in the Appellant's indictment, this issue, as well as Appellant's challenge to their jury instructions, which the government concedes there is a plain error in, can be resolved under the third and fourth prong of the plain error review. As in Reed, Appellants cannot demonstrate an effect on their substantial rights or on the fairness, integrity, or public reputation of the judiciary. As Reed held in reviewing a claim for plain error, this court can look to the entire record, which includes the sentencing proceedings. It's indisputable that Appellants admitted at sentencing that they knew they were felons when they possessed the firearms. They both are multi-time convicted felons who served multi-years. Well, they had been convicted of the offense earlier. I'm sorry, Your Honor, I don't... They had previously been convicted. Yes, they had previously been convicted. Yes, they had been previously convicted of 922G. They both served over four years in prison for being felons in possession of a firearm. That's my point. Yes, yes. More... To commemorate that lengthy term, it's unusual in this particular case that they'd already been convicted. Yes, there can be no doubt that both Appellants knew they were felons when they possessed the firearms. They knew they were serving time because they were felons. Correct. Yes, Your Honor. So, I mean, in this case, either of the Rahaf claims, based either on the indictment or on the jury instructions, there can certainly be no plain error here, and Rahaf does not impact their convictions, and they should not be vacated. Turning to the other arguments that Mr. Miller raised, there's no plain error in shackling Mr. Miller because... I mean, it seems like there was error. Yes. The question is whether... Correct, it cannot be a plain error. Well... Or whether... The question... I mean, I think it's probably a plain error, but it seems like the question is whether it affected his substantial rights. Yes, I'm sorry, Your Honor, that's what I meant. Even if... The government does think there's an argument that perhaps Mr. Miller waived this claim under Estelle. Even if it's only forfeited, he cannot survive on plain error. You only get to error if there is an obligation on the part of the district court to sua sponte, engage in a hearing, as to why is he being shackled. Correct. And I don't know of a case that puts that burden on the district court at the outset. There has been no such case yet, at least in the circuit, in the Baker case. And it is clear that if the point is made to the court, it has to engage in a hearing. Correct. Yes, the cases in this circuit that deal with shackling, in particular Baker, the defendant had always raised an objection, which is why the government does believe that under the Supreme Court's case in Estelle, which dealt with an analogous situation with prison guard, there is an argument that by not objecting to the shackling, Mr. Miller waived the argument. But here, even if he has only forfeited it, he cannot surpass the high hurdle of plain error review because it did not affect his substantial rights. You know, sort of the first interest involved with shackling is the presumption of innocence. And here, there's nothing on this record to show that Mr. Miller's presumption of innocence was impacted. I mean, just to be clear, there's nothing in the record that indicates that the jury saw the shackling. Correct. And in fact, I think the record indicates to the contrary. The only time the shackling comes up is when the district court, after Mr. Miller asked to go partially pro se, asks Mr. Miller and his counsel, what do you want to do about the shackles? And instead of asking for them to be removed, Miller and his counsel suggest, and the district court agrees, that he would just stay at defense counsel and question the witness from there. I think that certainly indicates the jury could not see the shackles. I also think the jury issued a split verdict to Mr. Miller, acquitting him on a drug charge and a firearm charge, which shows they were not prejudiced by seeing any shackling. I think the sort of second reason why there's no effect in substantial rights, another sort of thing that Deck and the other cases look to, is whether or not the restraint impeded his access to counsel. Here, there's nothing on the record to indicate Mr. Miller's access to counsel was impeded. He was acquitted of the December offense involving heroin. Yes. Yes, they acquitted him of the December offense involving heroin, and they committed, sorry, acquitted him of a 922-G offense occurring in November of 2016, which was the ammunition found in his house. And so I think sort of going back to this unimpeded assistance of counsel, he clearly had very strong assistance of counsel going so far as to engage in this hybrid representation arrangement where he questioned a witness while his counsel helped him. In addition, as I noted at the outset of my argument, Mr. Miller's convictions were supported by just overwhelming evidence that he engaged in armed drug trafficking and that he possessed firearms and he possessed them in furtherance of that drug trafficking, as is evidenced both by the DVR footage and then just the mass quantities of drugs and distribution paraphernalia and firearms found in the trap over which he had dominion and control. And finally, it would have been within the district court's discretion to keep Mr. Miller in the shackles had he objected. He has a violent criminal history. He was seated next to a co-defendant who also had a violent criminal history, and they were facing charges of armed drug trafficking. Another issue Mr. Miller raised was the jury note. The district court certainly did not abuse its considerable discretion in dealing with a note that came from the jury. The juror sent a note saying that some of them had a safety concern. With the agreement of the appellants, the district court called them in and the appellants agreed that specifically the district court was to question them on whether there were any outside influences. Two jurors self-identified and came forward and said that they had these safety concerns. Both of them said they were not affected by outside influences. Both of them raised general safety concerns about whether, one, whether the defendants would know her name in the jury verdict, and the other, whether he would run into the defendants walking out of the courthouse to the courtroom door. That second defendant did say, in response to the district court, sort of ameliorating his feelings and saying, no, no, you won't walk out with them. That's what everybody else said. That doesn't indicate that the rest of the jury had safety concerns and weren't coming forward. That indicates that the rest of the jury did not share those concerns and was seeking to alleviate it from that one juror. I think your colleague's argument, though, goes to the district judge's failure to inform the attorneys about the concern about having their names appear in the transcripts. But I think that is perhaps going a little bit further than what that juror asked. I took reading sort of the ex parte, is that juror was asking if her name would appear in the verdict or if anyone would know about the verdict, at which point the district court said, no, which is correct. She's not the foreperson. You're not. And gave them the general instruction, which all the parties agreed on, that there was nothing for them to be concerned about. There were no safety concerns here. Everything was fine. And I also think the second part of this is even if perhaps it would have been better practice for the district court to have had this hearing, there was certainly no prejudice here. The jury, as we noted, they issued a split verdict as to both Miller and Moore, showing certainly that they were not operating out of some fear for safety concern. They were very comfortable evaluating the evidence and issuing split verdicts as to both defendants. There was overwhelming evidence in this case as well. And so I think it was certainly within the district court's broad discretion to handle these two juror concerns in this way, sort of speaking to the jurors, ensuring that they could fairly deliberate, and issuing an instruction to the entire jury to make sure that they knew that there were no further safety concerns. Mr. Miller quickly did mention the hybrid representation arrangement. The district court did not abuse its discretion in allowing Mr. Miller to engage in hybrid representation. First of all, the defendant does not have a right to engage in hybrid representation, meaning that he retains his counsel, but then also can go partially pro se to conduct some of the trial himself. Because the district court has discretion to allow this arrangement. And further, there's no requirement that the district court do a FARETA hearing when it allows a defendant to engage in hybrid representation. A FARETA hearing is only required when a defendant invokes his right to self-representation. And this clearly didn't happen here. Miller never asked to go pro se. He specifically asked to proceed as, quote, co-counsel to partially question one defense witness with the close assistance of his counsel. And in addition, even though a FARETA hearing was not required, at the government's request, the district court certainly conducted an adequate colloquy. It made sure that the defendant was aware of the dangers and disadvantages of self-representation. So before it permitted Miller to question Agent Spence, the district court asked him to confirm that he understood that he had legal counsel, that his counsel was competent, that he had no experience and would be at a disadvantage questioning the witness himself. His counsel was there to advise him. He would be held to the same standard as a lawyer. And he had to follow the court's rules and instructions. When there was certainly no abuse of discretion there, the court did everything to give Mr. Miller precisely what he wanted and ensured that he made that choice knowingly, intelligently, and voluntarily. If the court has no further- I think we understand your position. OK. Then the government, for the reasons stated today and the reasons stated in our briefs, respectfully requests that appellant's sentences and convictions be affirmed. Thank you. Ms. Lowenthal. Thank you. Due to our limited time, I would adopt all of the issues in our initial brief. And I would say that the decision here on this jurisdictional issue must be consistent with 11th Circuit precedent. 922G, it merely describes prohibited conduct, what categories of individuals are prohibited from possessing firearms. Do you want to respond to the government's suggestion that Rehave has sort of an alternative holding that 922G contains a mens rea, an inherent mens rea component? We completely disagree, and we submit that the mens rea component, while in some cases it might be just a missing element in an indictment, in this case it is just missing entirely. There's no language tracking the statute 924A, and there is no citation to 924A. And without those two statutes in tandem, it does not cite criminal conduct. And as a result, we submit that Izurieta is binding precedent, as well as the Peter case, the St. Hubert case. Can I ask you a question about that, though? Yes. If we were to conclude that 922G has an inherent mens rea requirement, or that Rehave alternatively held implicitly that 922G has an inherent mens rea requirement to it of knowing, knowledge, then it seems like the issue for your client would be whether your client had notice, right? Notice. You cannot correct a jurisdictional defect by what the underlying fact is. Right, but my question assumes that there is, and I don't know that that's what we're going to hold, but I'm just asking you. If it's correct that there is an alternative holding somewhere in Rehave that 922G implicitly has a mens rea requirement to it, then the issue, it seems to me, would be whether there's notice to your client by this indictment about knowledge. Maybe you disagree with that, and if you do, that's fine. I'm just asking you what the basis would be. We do disagree, and we submit that the correct reading of Rehave is that these two statutes operate in tandem, and that we have a jurisdictional defect. It cannot be cured by whether or not these defendants may have known that they served four years in prison previously, that a jurisdictional defect may not be corrected by adding facts, by going behind the indictment. The indictment has to charge a... Even if the government is correct that Rehave can be read for an alternative holding that 922G has an inherent knowledge requirement. We submit that that is a misreading of... I understand, but the question asks you to assume that... And I don't know that we're going to reach that conclusion, but it's helpful to me to have all the different alternatives out, and I just want to make sure I give you an opportunity to address it. That it would not. It is not a complete criminal statute that is our position. Okay, thank you. I should have two minutes. Thank you, Your Honor. With respect to the jury note question, in all of the other cases that deal with this issue, the district court provided a transcript of his or her ex partes with the individual jurors to the lawyers immediately thereafter, giving the lawyers the opportunity to then make objections or further applications. That is what was not done here, but not only was it not done here, but the district court materially withheld certain critical items, like, for example... I don't think it was done intentionally. Well, I'm not saying that, Judge. I'm just saying that, unfortunately, this is the effect of it. Okay? And the effect of it is, and specifically the second juror who claimed to be acting on behalf or speaking on behalf of all of the other jurors, specifically asked, are our names documented on the transcripts where someone could obtain them? And I know that the district judge was concerned initially before even conducting these interviews that the jurors were going to ask, if they could not put their finger on a specific reason why they were afraid, that maybe they were concerned about having protection afterwards, which the district judge rightfully said, I can't provide them with that. So this was not intentional on the part of the district judge. I'm not suggesting it. All I'm saying is that counsel needed to have that opportunity to be able to articulate on behalf of their clients so that we could get to the bottom of why was it that these jurors were upset? What was causing it? Because there was nothing that happened during the trial. They knew nothing about either of the defendant's pasts. Your colleague suggests that whatever error there may have been is harmless because the instruction that was later given to the jury, which was you're not in any danger, everything's safe, whatever, would have addressed all of those concerns. I don't know if you want to respond to that. I would love to respond to that, and the problem is that was a self-fulfilling prophecy because the district judge candidly did not answer, when he had the individual interviews with the individual jurors, did not address their questions. For example, never told one or the other jurors about whether their names would appear on the transcript of the trial because it wouldn't jury selection. And so they were candidly lulled into believing that the only thing they had to worry about was whether it would be getting out of the courthouse and going to the parking lot. That was really all there was to it, or whether they would have to sign their names. But let me say this. I mean, regardless of whether that may or may not have been true, right, if the jury believed that, then doesn't that resolve any concern about any prejudice to your client? No. No, not at all. Why not? Well, because we never understood the reason why the jurors were feeling threatened. That was the reason for the hearing. If there had been an individual voir dire with each of the jurors, which would have been required under the case law for the judge to do that, then the questioning of each of these jurors would have gotten to the bottom of it. And if it was just some wistful thought on behalf of all 12, which I candidly would find difficult to believe, and also, by the way, the trial judge, who's now a senior judge, who's an excellent judge and who has been on the bench for a long time, with a lot of experience as were the prosecutor and defense counsel, nobody in their collective careers had ever seen a jury send out a note during deliberations saying that, what's going to happen to us if we vote this guy guilty? Just to be clear, after the district judge instructed the jury, was there anything else at all from the jury with respect to concerns for their safety? There was nothing else. Okay. Thank you. Thank you. I think we have your case. Thank you. Mr. Scalf, you and Ms. Luff, court appointed, and we appreciate your having taken the assignments.